IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NOS. PD-0936-07 AND PD-0937-07







THE STATE OF TEXAS


v.


CANDELARIO GARCIA-CANTU, Appellee







ON APPELLEE'S PETITIONS FOR DISCRETIONARY REVIEW


FROM THE NINTH COURT OF APPEALS


MONTGOMERY COUNTY





 Keasler, J., filed a dissenting opinion in which Keller, P.J. and Hervey J.,
joined.


O P I N I O N 


 I respectfully dissent. The totality of the circumstances do not support the majority's
conclusion that the citizen-police interaction between Candelario Garcia-Cantu and Officer
Okland amounted to a seizure under the Fourth Amendment. 

 Supreme Court precedent instructs that the "free to leave" test has no application
under the facts of this case. In Florida v. Bostick, Broward County narcotics agents boarded
a bus that was on a stopover in Ft. Lauderdale. (1) The agents asked Bostick, the respondent,
for permission to search his suitcase. (2) After Bostick consented to the search, the agents
discovered cocaine. (3) Bostick was then arrested and charged with trafficking cocaine. (4)
Claiming that the search conducted by the agents violated his Fourth Amendment rights,
Bostick moved to suppress the cocaine at trial. (5) The Supreme Court granted certiorari to
determine whether Bostick was "seized" within the meaning of the Fourth Amendment when
the agents requested his consent to search his suitcase. (6)

 The Court rejected Bostick's argument that he was seized under the Fourth
Amendment because a "reasonable bus passenger would not have felt free to leave under the
circumstances of this case because there is nowhere to go on a bus." (7) In doing so, the Court 
stated that "when the person is seated on a bus and has no desire to leave, the degree to which
a reasonable person would feel that he or she could leave is not an accurate measure of the
coercive effect of the encounter." (8) Concluding that "Bostick's freedom of movement was
restricted by a factor independent of police conduct[,]" the Court held that "the appropriate
inquiry is whether the police conduct would have communicated to a reasonable person that
the person was not free to decline the officer's request or otherwise terminate the
conversation." (9) This standard, according to the Court, "applies to encounters that take place
on a city street or in an airport, and it applies equally to encounters on a bus." (10) Finally,
without deciding whether Bostick was "seized," the Court remanded the case to the Florida
Supreme Court so that it could consider the totality of the circumstances under the correct
legal standard. (11)

 In Florida v. Royer, (12) the Supreme Court stated that "law enforcement officers do not
violate the Fourth Amendment by merely approaching an individual on the street or in
another public place, by asking him if he is willing to answer some questions, [or] by putting
questions to him if the person is willing to listen." (13) And in Illinois v. Lidster, (14) after quoting
the above language from Royer, it added that "it would seem anomalous were the law (1)
ordinarily to allow police to seek the voluntary cooperation of pedestrians but (2) ordinarily
to forbid police to seek similar voluntary cooperation from motorists." (15) 

 Like Bostick, Garcia-Cantu's freedom of movement was restricted by a factor
independent of Officer Okland's conduct. Garcia-Cantu deliberately and voluntarily parked
his truck at the dead-end of the 300 block of South Pacific while waiting for his friend to exit
the house at 309 South Pacific. The record makes clear that the 300 block of South Pacific
is a very narrow dead-end street with no center dividing line. The narrow character of the
street does not permit two vehicles to pass freely while traveling in opposing directions. In
such a circumstance, one vehicle would be forced to yield to another. Parked with the front
of his truck facing the dead-end, Garcia-Cantu placed himself in the position of having no
direct thoroughfare. So even without the presence of Okland's patrol car, Garcia-Cantu's
egress was not completely uninhibited. In this position, any vehicle traveling on the street
could further restrict Garcia-Cantu's departure.

 I would agree with the majority in reversing this conviction if Garcia-Cantu had
expressed any reluctance to talk to Officer Okland. But there was no indication that Garcia-Cantu wanted to leave or that he informed Officer Okland that he did not want to speak to
him. And, as Bostick makes clear, this is the appropriate test.

 Of course, as we said in State v. Velasquez, (16) a case involving an encounter between
a police officer and a passenger on a bus, 

 even an innocent passenger's pulse might race when a police officer identifies
himself and begins asking questions. He might understandably be
uncomfortable saying, 'Officer, I don't want to talk to you. Please leave me
alone.' But the Constitution does not guarantee freedom from discomfort. 
And the test is not whether a timid person would feel free to terminate the
interview. Instead, the Supreme Court uses a 'reasonable person' standard." (17)


 I think it is clear that had Garcia-Cantu been in a public street with a clear
thoroughfare, there would have been no Fourth Amendment violation. So according to the
majority's reasoning, all one needs to do to insulate oneself from police contact is to duck
into a blind alley upon seeing an officer approaching or pull his or her vehicle onto a dead-end street. The person would then be able to say, in effect, "King's X! I'm on base. You
can't even walk up to me and attempt to talk to me. Anyone else in the world can, but you
can't." This would indeed add a new dimension to the word "silly."

 The majority has labored mightily to justify its conclusion that Garcia-Cantu's Fourth
Amendment rights were violated, citing many federal and state opinions, including even at
least one pre-Bostick case from the Ninth Circuit. Yet, it does not include any Supreme
Court cases that are directly in point, because there are none. And, after all, that Court is the
ultimate and "infallible ... because [it] is final" (18) Fourth Amendment authority. I believe that
in light of its recent search and seizure opinions that it would reach the same conclusion that
I do--that this is a police encounter permissible under the Fourth Amendment. Because the
majority holds otherwise, I dissent. 


DATE DELIVERED: May 7, 2008

PUBLISH




 
1. 501 U.S. 429, 431-32 (1991).
2. Id.
3. Id. at 431.
4. Id. at 432.
5. Id.
6. Id. at 433.
7. Id. at 435.
8. Id. at 435-36.
9. Id. at 436.
10. Id. at 438.
11. Id. at 437.
12. 460 U.S. 491 (1983).
13. Id. at 497.
14. 540 U.S. 419 (2004).
15. Id. at 426.
16. 994 S.W.2d. 676 (1999).
17. Id. at 679.
18. Brown v. Allen, 344 U.S. 443, 540 (1953) (Jackson, J., concurring in result).